Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>
UNITED STATES OF AMERICA,<br><br>
v.<br><br>
MICHELLE C. CANTATORE,
</td><td>
Criminal No. 16-0189 (ES)<br><br>
OPINION
</td></tr>
</table>

SALAS, DISTRICT JUDGE

Before the Court is defendant Michelle C. Cantatore's ("Defendant") emergency motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 34 ("Motion")). The Government opposes the motion. (D.E. No. 40 ("Gov. Opp. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See United States v. Barner*, 656 F. App'x 600, 602 (3d Cir. 2016). For the following reasons, the Court DENIES the Motion.

## I.      Background

Defendant was arrested on March 6, 2015, pursuant to an information alleging one count of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of wire fraud in violation of 18 U.S.C. § 1343. (D.E. No. 36 ("Def. Mov. Br.") at 5). On April 12, 2016, Defendant pled guilty to both counts of the information. (*Id.*; *see also* D.E. Nos. 20–22). Defendant admitted that she used a paintball gun made to look like a real gun to rob three banks insured by the FDIC of almost $300,000, and she engaged in a scheme to defraud a victim of almost $200,000. (Gov. Opp. Br. at 9; D.E. No. 21 ("Guilty Plea") at Schedule A). On September 7, 2016, this Court sentenced Defendant to 162 months imprisonment, a three-year term of supervised release, and an order to pay restitution in the amount of $406,703.13. (Gov. Opp. Br. at 2). Based on a total offense level of 28 and a criminal history category of V, Defendant was subject to a guideline range of 130 to

162 months imprisonment.[1]  (D.E. No. 29 ("Sentencing Tr.") at 3:21–4:2).  The Court imposed a sentence at the top of the guideline range, relying on (i) the violent and serious nature of the bank robberies, specifically the method and words used in the bank robberies; (ii) the serious nature of the wire fraud; (iii) the trauma to the victims; and (iv) what it would take to promote respect for the law for this Defendant.  (*Id.* at 41:9–50:10).  Defendant has been incarcerated since her arrest in 2016 and is currently housed at FCI Danbury.  (Def. Mov. Br. at 2).  To date, Defendant has served approximately 62 months (or 38%) of her sentence.  (*Id.*; Gov. Opp. Br. at 2).

On March 28, 2020, Defendant submitted a request for compassionate release to the warden at FCI Danbury.  (Def. Mov. Br. at 7).  The warden denied her request on April 22, 2020.  (*Id.*; Gov. Opp. Br. at 11).  On May 5, 2020, Defendant filed the present Motion alleging that the COVID-19 pandemic and her underlying medical conditions of chronic obstructive pulmonary disorder ("COPD") and hypothyroidism constitute compelling and extraordinary reasons to justify reducing her sentence to time-served.[2]  (*See generally* Motion).  The Government filed its opposition to the Motion on May 11, 2020 (D.E. No. 40), and Defendant filed a reply on May 15, 2020 (D.E. No. 43).  This Opinion follows.

## II.    Legal Standards

Once a term of imprisonment has been imposed, the Court may only modify it under very limited circumstances.  *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)).  Relevant here, 18 U.S.C. § 3582(c)(1) provides that, in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

---

[1]     The plea agreement did not stipulate to a guideline range, but the Government and defense counsel agreed to this guideline calculation, and the Government did not seek an upward variance.  (Sentencing Tr. at 3:21–4:13).

[2]     Defendant suggests that the Court could, in addition to reducing her sentence to time served, modify her conditions of supervised release to include a period of home confinement.  (Def. Reply. Br. at 12).  Because the Court declines to reduce Defendant's sentence to time served, it does not address this argument.

fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on the defendant's behalf or the
lapse of 30 days from the receipt of such a request by the warden of
the defendant's facility, whichever is earlier, may reduce the term of
imprisonment (and may impose a term of probation or supervised
release with or without conditions that does not exceed the unserved
portion of the original term of imprisonment), after considering the
factors set forth in section 3553(a) to the extent that they are
applicable, if it finds that-

> (i) extraordinary and compelling reasons warrant such a
> reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

The United States Sentencing Commission has promulgated a policy statement that, in relevant
part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary
or compelling reasons warrant a reduction in a defendant's sentence, (ii) the defendant is not a
danger to the safety of others or to the community, and (iii) release from custody complies with
Section 3553(a) factors. *United States v. Brummett*, No. 6:07-0103, 2020 WL 1492763, at *2
(E.D. Ky. Mar. 27, 2020) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13
(U.S. SENTENCING COMM'N 2018)).

### III.   Analysis

#### A.   Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must
meet Section 3852(c)(1)(A)'s exhaustion requirement. *United States v. Raia*, 954 F.3d 594, 597
(3d Cir. 2020). This requires that either 30 days have passed since the receipt of a compassionate
release request by a warden, or that the defendant has exhausted all administrative remedies.
18 U.S.C. § (c)(1)(A). Here, the parties agree that 30 days have passed since the warden at FCI

Danbury received Defendant's request, and thus this requirement is satisfied.[3]  (Def. Mov. Br. at 7; Gov. Opp. Br. at 12); *see also United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) ("[U]nder the statute, the longest period of time that Defendant will need to wait before filing his motion is 30 days. . . . This 30-day exception to the statutory exhaustion requirement already provides a built-in 'accelerant to judicial review,' which 'reflects congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released.'").

### B.    Extraordinary and Compelling Reasons for Reduction

Defendant's next hurdle is to establish that "extraordinary and compelling reasons" warrant a reduction of her sentence.   Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons standard."  *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *5 (D.N.J. May 15, 2020).  The Sentencing Commission issued a policy statement which includes an application note that lists three specific circumstances that qualify as extraordinary and compelling; generally speaking, the enumerated circumstances include (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family

---

[3]      Defendant argues at length about the Court's ability to waive the exhaustion requirement.  (Def. Mov. Br. at 7–20).  Defendant's concern apparently derives from certain case law holding that the 30-day provision only applies when the Bureau of Prisons ("BOP") takes no action within thirty days.  *See United States v. D'Acunto*, No. 18-0014, 2020 WL 1904007, at *2 (S.D.N.Y. Apr. 16, 2020) (collecting cases).  The plain language of the statute contains no such restriction, and this issue is not raised by the Government, who concedes that one of the alternatives is satisfied here because Defendant waited 30 days to file the Motion.  (Gov. Opp. Br. at 12 n.3 & 14).  In any event, the Court need not elaborate on this issue at this time because it denies Defendant's Motion.

circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D). Here, Defendant argues that the COVID-19 pandemic and her underlying medical conditions of COPD and hypothyroidism qualify as extraordinary and compelling reasons for a reduction under the catchall provision. (Def. Mov. Br. at 21).[4]

However, the Court's authority to apply the catchall provision in the policy statement is not entirely clear. Section 1B1.13 was not updated after the First Step Act was passed, and it therefore was drafted to address motions made by the BOP, not motions made by a defendant. *United States v. Rodriguez*, No. 03-0271, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020). Because the policy statement indicates that any "other reasons" are sufficient "*[a]s determined by the Director of the [BOP]*," U.S.S.G. § 1B1.13, Application Note 1(D) (emphasis added), courts have grappled with the issue of whether a court—rather than the BOP—can actually evaluate what falls into the catchall provision. Some courts have concluded that it need not be the BOP that decides what falls into this catchall provision, recognizing that this section is outdated and therefore inapplicable. *Rodriguez*, 2020 WL 1627331, at *3–4 (concluding that "the Court may independently assess whether 'extraordinary and compelling' reasons exist"). Other courts

---

[4]      In a footnote, Defendant makes a passing reference to Application Note 1(A) which, as set forth above, suggests that a terminal illness or serious physical or medical condition may constitute extraordinary or compelling reasons for a reduction. (Def. Mov. Br. at 21 n.9). Defendant does not argue that her current medical conditions meet the exacting criteria articulated in subsection 1(A), but she argues that her medical conditions combined with the COVID-19 pandemic constitute "other reasons" for a reduction. (*Id.* at 21 & n.9).

disagree with this approach, maintaining that courts must strictly adhere to the policy statement until the Sentencing Commission changes the policy. *See United States v. Mollica*, No. 14-0329, 2020 WL 1914956 (N.D. Ala. Apr. 20, 2020) ("Until Congress changes the requirement to adhere to the policy statement or the Sentencing Commission changes the policy statement itself, this court agrees with our sister courts and finds that Subsection D requires a finding of extraordinary circumstances *by the BOP* and continues to bind the court."); *United States v. Lynn*, No. 89-0072, 2019 WL 3805349, at \*4 (S.D. Ala. Aug. 13, 2019). This Court need not weigh in on this issue because it finds that even if it had the authority to evaluate Defendant's arguments under the catchall provision, Defendant has not demonstrated compelling and extraordinary reasons for a reduction of sentence to time served.

As a preliminary matter, it is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis. The seriousness of the outbreak is extensively detailed in the parties' submissions and is undisputed by the Government. (Gov. Opp. Br. at 2). In the wake of COVID-19, the Court considers Defendant's motion with the utmost gravity. However, as the Third Circuit has made clear, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Thus, the Court must conduct a highly individualized inquiry of this Defendant to determine whether COVID-19 in conjunction with her alleged underlying medical conditions constitute extraordinary and compelling reasons for a reduction of her sentence to time served.

Here, Defendant argues that "her COPD and hypothyroidism present grave threats to her well-being," and that those medical conditions, in conjunction with the conditions at FCI Danbury

and her rehabilitation amount to extraordinary and compelling reasons for release.  (Def. Mov. Br. at 20–28).  Although Defendant claims that she was diagnosed with COPD shortly before her arrest (*id.* at 7), Defendant's COPD is currently unsubstantiated.  In its opposition, the Government correctly points out that Defendant did not put forth any documentation to support a diagnosis of COPD, or that she is currently suffering from the condition.  (Gov. Opp. Br. at 19).  The Government also argues that Defendant did not mention her COPD to U.S. Probation when it was preparing the presentence investigation report in this case; nor has she mentioned it to her doctors at FCI Danbury over the past five years.  (*Id.*).  Although Defendant requested additional time to file her reply in order to substantiate her COPD, she admits that she has not been able to corroborate this concern.  (Def. Reply Br. at 7).  Accordingly, Defendant fails to show how her alleged COPD warrants a finding of extraordinary and compelling reasons for a reduction.

Next, Defendant argues that her hypothyroidism puts her "at increased risk of viral infection or complications."  (Def. Mov. Br. at 6–7; Def. Reply Br. at 7–8).  However, Defendant does not dispute that FCI Danbury is attentive to her hypothyroidism.  (*See generally* Def. Mov. Br.).[5]  Moreover, hypothyroidism is not one of the conditions identified by the Centers for Disease Control ("CDC") as increasing a person's risk for developing serious illness from COVID-19. *See People Who Are at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last reviewed May 14, 2020) (last visited May 21, 2020); *United States v. Numann*, No. 16- 00025, 2020 WL 1977117, at *3 (D. Alaska Apr. 24, 2020) (finding no extraordinary and compelling

---

[5]    In her reply brief, Defendant argues that her current treatment regimen appears to be "inadequate."  (Def. Reply Br. at 6–7).  Neither side attached the relevant medical records to its briefing, although the Government did provide the records to defense counsel and offer them for the Court's *in camera* review.  (Gov. Opp. Br. at 19 n.8).  However, the Court need not evaluate the medical records, because even if Defendant's allegations are true, the Court's ultimate holding would remain unchanged.

reasons to warrant release notwithstanding the COVID-19 outbreak and defendant's epilepsy or hypothyroidism).  Defendant cites to a position statement from the American Association of Clinical Endocrinologists to support her position that uncontrolled hypothyroidism may generally increase a person's risk for viral infection and complications.  (Def. Mov. Br. at 7 & n.4). However, that same website also indicates that, as of its publication date of April 15, 2020, "there is currently no reason to believe that most people with thyroid disease are at increased risk to contract this novel coronavirus or to experience complications."  *AACE Position Statement: Coronavirus (COVID-19) and People with Thyroid Disease*, AMERICAN ASSOCIATION OF CLINICAL ENDOCRINOLOGISTS, https://www.aace.com/recent-news-and-updates/aace-position-statement-coronavirus-covid-19-and-people-thyroid-disease (Apr. 15, 2020) (last visited May 21, 2020).  Accordingly, Defendant has not demonstrated that she is at an increased risk of developing serious illness from COVID-19 based on her hypothyroidism.  *See United States v. Pinto-Thomaz*, No. 18-0579, 2020 WL 1845875, at *3 (S.D.N.Y. Apr. 13, 2020) (denying motions for compassionate release where neither defendant could point to strong evidence of a medical condition that increased their risk of experiencing more dire complications from COVID-19).

Finally, Defendant relies on the conditions at FCI Danbury to argue that there exist extraordinary and compelling reasons for her release.  With respect to the conditions at FCI Danbury, the parties have different views regarding the COVID-19 policies and procedures and the status of the outbreak at the facility.  The Government outlines the many steps the BOP has taken in preparation for and in response to the COVID-19 pandemic (Gov. Opp. Br. at 2–7), and attaches a declaration submitted by the warden of FCI Danbury outlining the steps the prison is taking to protect the inmates (*id.* at 8–9; D.E. No. 40-1).  To rebut this evidence, Defendant mainly relies on other district court decisions granting release to inmates or pretrial detainees housed at

FCI Danbury.  (*See* Def. Mov. Br. at 2, 5, 17 & 19–20; Def. Reply Br. at 4).  The Court acknowledges that FCI Danbury appears to be taking many necessary steps to try and protect its inmates from the COVID-19 outbreak.  The Court has also reviewed the cases cited by Defendant and recognizes that other courts have taken issue with the conditions at FCI Danbury.  However, the Court need not resolve the conflicting evidence because it concludes that, without a documented underlying medical condition that places Defendant at a higher risk of developing serious illness if she were to contract COVID-19, Defendant has not demonstrated extraordinary and compelling reasons for release.[6]  *See United States v. Gold*, No. 15-0330, 2020 WL 2197839, at *2 (N.D. Ill. May 6, 2020) (finding no extraordinary and compelling reasons for release where defendant generally received treatment for his identified conditions, which were not among those the CDC had identified as significant risk factors); *United States v. Johnson*, No. 98-0860, 2020 WL 2124461, at *2 (E.D.N.Y. May 5, 2020) ("Johnson's health conditions do not meet the standard of extraordinary or compelling circumstances, even in light of the COVID-19 pandemic."); *United States v. Khawaja*, No. 18-0127, 2020 WL 1940848, at *3 (D.N.H. Apr. 22, 2020) (finding no extraordinary and compelling reasons for release from FCI Danbury where defendant did not submit "sufficient proof that he suffers from a medical condition that puts him at higher risk for complications from the virus").

---

[6]      The cases cited by Defendant involving other inmates at FCI Danbury further emphasize this point. *States v. Park*, No. 16-0473, 2020 WL 1970603, at *1 (S.D.N.Y. Apr. 24, 2020) (releasing an inmate with a documented history of respiratory issues, including severe asthma, and immune-compromising diseases); *United States v. Sawicz*, No. 08-0287, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (granting release of an inmate where the Government did not dispute that the COVID-19 pandemic, combined with defendant's particular vulnerability to complications because of his hypertension, constitute extraordinary and compelling reasons for release); *United States v. Mel*, No. 18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (granting motion for compassionate release where defendant had "effectively been prevented from receiving necessary medical care for a potentially life-threatening condition"); *Martinez-Brooks v. Easter*, No. 20-0569, 2020 WL 2405350, at *3 (D. Conn. May 12, 2020) (granting release for four petitioners at FCI who "suffer[ed] from medical conditions that place them at higher risk for serious illness or death from the disease caused by [COVID-19]").

Accordingly, the Court finds that Defendant has not shown that extraordinary or compelling reasons warrant release.[7]

### C.      Section 3553(a) Factors and Dangerousness

Without extraordinary and compelling reasons for release, the Court's inquiry could end here.  Nevertheless, even if such extraordinary and compelling circumstances did exist, the Court would still deny the Motion based on an analysis of the Section 3553(a) factors and dangerousness.

Before reducing a term of imprisonment under Section 3582(c)(1), the Court must also consider the Section 3553(a) factors and establish that the defendant is not a danger to the safety of any other person in the community as provided in 18 U.S.C. § 3142(g).  18 U.S.C. § 3582(c); U.S.S.G. § 1B1.13(3).  Section 3553(a) and Section 3142(g) contain overlapping considerations.  First, the applicable § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[7]      Defendant also argues that she has been rehabilitated in prison and is a different person today.  (Def. Mov. Br. at 27–28).  The Court commends Defendant for her post-sentencing conduct, including her efforts to take classes and her receipt of 40 certificates of completion for various programs.  (*Id.* at 4; D.E. No. 35-1).  However, as Defendant acknowledges, rehabilitation alone cannot constitute an extraordinary and compelling reason for release.  (*Id.* at 27).

18 U.S.C. § 3553(a); *United States v. Brown*, No. 07-0019, 2020 WL 2466081, at \*4 (D.N.J. May 13, 2020).  And "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."  18 U.S.C. § 3553(a).  Additionally, to evaluate dangerousness pursuant to 18 U.S.C. § 3142(g), the Court considers: (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

Based on the totality of Defendant's actions, the Court finds that an analysis of the Section 3553(a) factors also precludes the Court from granting Defendant's Motion.  As the Court explained at Defendant's sentencing hearing, a sentence at the top of the guideline range was necessary to address the vicious nature of the bank robberies Defendant committed, specifically the method and words used, the serious nature of the wire fraud, the trauma caused to the victims, and what it would take to promote respect for the law for this Defendant, who has an extensive criminal history.  (Sentencing Tr. at 41:9–50:10).[8]  Despite Defendant's arguments to the contrary, these considerations hold true today, and cutting Defendant's sentence by over 60% "would certainly fail to reflect the seriousness of [her] violations."  *Brown*, 2020 WL 2466081, at \*4 (concluding that the Section 3553(a) factors weighed against granting defendant's motion for a reduced sentence); *see also Alexander*, 2020 WL 2507778, at \*5 (denying motion for compassionate release where the same considerations from sentencing held true and warranted a sentence at the top of the guideline range).

---

[8]      During the bank robberies, Defendant pointed the gun at various bank employees and repeatedly threatened to kill them.  At one point, Defendant advised bank employees that she had followed them, knew where they lived, and threatened that if they did not follow her instructions, she would come to their houses, kill them, and burn their houses down.  (Sentencing Tr. at 42:19–45:8).  As to the wire fraud, Defendant befriended a friend of her father's, made him feel like she cared about him, and then preyed upon his age and weaknesses, ultimately stealing close to $200,000 from him.  (*Id.* at 46:1–14).

Finally, turning to dangerousness under Section 3142(g), the same considerations, specifically the nature and circumstances of the vicious crimes committed here and the criminal history of the Defendant, demonstrate that Defendant would present a danger to others if released. *United States v. Pass*, No. 10-0739, 2020 WL 2332001, at *3 (E.D. Pa. May 11, 2020).

## IV.     Conclusion

For the foregoing reasons, Defendant's motion is DENIED.   An appropriate Order accompanies this Opinion.

s/ *Esther Salas*
**Esther Salas, U.S.D.J.**